Elaine RASCON, as legal representative of David Rascon, deceased, Plaintiff-Appellee,

v.

Phillip T. HARDIMAN, individually and in his official capacity as Executive Director, Cook County Department of Corrections; Howard Pearman, individually and as a corrections officer; Edward Legenza, individually and as a corrections officer; Mark Paczkowski, individually and as a corrections officer; William Stein, individually and as a corrections officer, Defendants-Appellants.

No. 85–1589.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1986.

Decided Sept. 26, 1986.

Karen Dimond, Asst. State's Atty., Chicago, Ill., for defendants-appellants.

Peter Francis Geraci, Chicago, Ill., for plaintiff-appellee.

Before WOOD, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiff Elaine Rascon brought this action on behalf of her deceased husband, David Rascon, under 42 U.S.C. § 1983, alleging that the actions of certain county correctional institution guards in subduing her husband and the policies promulgated and implemented by the Director of Corrections violated his constitutional rights. Trial was held before a jury, which found for the plaintiff and against all defendants. The defendants moved for judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, for a new trial. The motion was granted as to one defendant[1] but denied as to the other defendants, the appellants in this appeal. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

### I

Plaintiff Elaine Rascon brought this suit on behalf of her deceased husband, David Rascon, under 42 U.S.C. § 1983 for injuries sustained during a beating by corrections officers at the Cook County Correctional Facility.[2] On the recommendation of the district judge, the case was referred to a magistrate for supervision of discovery and conduct of hearings. On April 12, 1983, by consent of the parties, the case was reassigned to the magistrate for trial. The case was tried to a jury on July 13–15, 1983. The parties stipulated that Rascon died of causes unrelated to the incident.

The incident in question took place on March 29, 1980 at the Cook County Correctional Facility where David Rascon was a pretrial detainee. Rascon was held in the facility's Residential Treatment Unit (RTU), a ward designed to house inmates who are believed to have mental problems or who have been unable to fit into the general prison population. On March 29, Rascon became involved in an altercation with two inmates named Teeters and Kimbrough in the kitchen where all three were working. Teeters reported to Sergeant Pearman that he had been attacked by "a Mexican with a blue T-shirt and long hair." Teeters also told Sergeant Pearman that his alleged attacker "went up the stairs." Tr. 441. Sergeant Pearman called upon Officers Paczkowski and Legenza to accompany him to find the inmate involved. At this juncture, the factual picture painted by the plaintiff differs radically from that painted by the defendants.

The plaintiff's version of the incident in question is derived chiefly from the deposition of Melvin Boyd, who was also an inmate at the facility at the time. Mr. Boyd's deposition was offered into evidence because Boyd, who had subsequently been released from the correctional facility, was unavailable to testify at the trial. According to Mr. Boyd's deposition testimony, after the Teeters incident, Mr. Rascon returned to a dormitory room on the first floor adjacent to the kitchen area. The three guards found him there and took him to the stairwell. Boyd followed them. According to Boyd, when they reached the third floor landing, the officers proceeded to beat Rascon severely. Prior to the commencement of the beating, Rascon did not struggle with the officers or offer any resistance either physical or verbal. During the course of the beating, Rascon was kicked between the legs by one of the officers. At that point, he began to scream in pain; the officers stopped the beating when they noticed that Rascon's pants were covered with blood. The officers in-

---

1. In plaintiff's complaint, Sheriff Richard J. Elrod, Sheriff of Cook County, was named as a defendant. At the close of plaintiff's case, the defendants moved to direct out Sheriff Elrod and Director Hardiman. That motion was initially granted but later reversed. The jury entered a verdict against Sheriff Elrod and awarded $50,000 in compensatory damages and $100,000 in punitive damages against him. Defendants' post-trial motion for a judgment notwithstanding the verdict (judg-

ment n.o.v.) was granted with respect to Sheriff Elrod. He is not a party to this appeal.

2. This suit was filed on January 17, 1981 by David Rascon. On November 3, 1981, Elaine Rascon filed an amended complaint as legal representative of her deceased husband. On May 20, 1982, a second amended complaint was filed.

structed Rascon to drop his pants so that they could ascertain the source of the blood. However, there was too much blood for the officers to make such a determination. Therefore, they instructed Rascon to shower so that they could examine him better. They also sent Boyd to get a clean change of clothing for Rascon. When Rascon returned from the shower, he had a rag between his legs and he was dripping blood and water on the floor. Thereupon, the officers escorted Rascon to the hospital. Officer Stein, who was seated at a desk at the top of the stairwell, observed the incident but did not interfere.

The defendants offer a markedly different account of the incident. According to their testimony, after the Teeters incident, Rascon returned to his third floor dormitory room. The officers found him there and removed him from the room, which was occupied by some forty to fifty men, for private questioning regarding the Teeters incident. They claim that, when they reached the second floor landing, Rascon refused to proceed and ran back up to the third floor landing with the officers in hot pursuit. According to the defendants, when Rascon reached the third floor, he grabbed a heavy metal chair which he brandished at the officers. The officers claim that Rascon fell to the floor as they took the chair from him and that, in the struggle, the chair caused Rascon's injury. They claim that they noticed a small spot on Rascon's pants and instructed him to drop his pants so that they could investigate. They claim that there was a small amount of blood on Rascon's thigh so they told him to shower so that they could discern the source of the wound. When they realized that Rascon was bleeding from his penis, they took him to the hospital.

The plaintiff also presented the testimony of Dr. Mohammed Tabib, the urologist who examined Rascon at the emergency room of Cook County Hospital on March 29, 1980. He testified that Rascon gave a history of being beaten and kicked in the perineum. Dr. Tabib's diagnosis was urethral trauma with leakage around the urethra. Tr. 368–75. Following treatment,

Rascon was returned to the RTU. His hospital bills, which amounted to $9,300, were not paid as of the date of oral argument, although the county claimed to have absorbed this expense. Additional testimony given by Mr. Boyd indicated that corrections officers frequently inflicted beatings on RTU inmates.

At the close of the plaintiff's case, the defendants made a motion for a directed verdict as to defendants Stein, Hardiman (the Executive Director of the Cook County Department of Corrections) and Elrod (the Sheriff of Cook County). This motion was granted as to Hardiman and Elrod but denied as to Stein. Near the close of the defendants' case, the jury was excused for a day while the court and the parties considered jury instructions. At that time, the magistrate also reconsidered her ruling with respect to defendants Hardiman and Elrod and put them back in the case. The defendants' motions for mistrial or for a continuance to prepare a new theory of defense were denied.

At the close of the defendants' case, the motion for a directed verdict as to Stein, Elrod and Hardiman was renewed. The jury returned a verdict for the plaintiff and assessed the following damages:

| | Compensatory | Punitive |
| --- | --- | --- |
| Richard J. Elrod | $50,000 | $100,000 |
| Phillip T. Hardiman | 50,000 | 100,000 |
| Howard Pearman | 40,000 | 25,000 |
| Mark Paczkowski | 40,000 | 25,000 |
| Edward Legenza | 40,000 | 25,000 |
| William Stein | - 0 - | 1,000 |

On July 27, 1985, the defendants filed a motion for judgment n.o.v., or, in the alternative, for a new trial. On March 8, 1985, the court granted judgment n.o.v. as to defendant Elrod and denied judgment n.o.v. as to all other defendants. This appeal followed.

## II

The issues on this appeal are whether the evidence elicited at trial was sufficient, as a matter of law, to support verdicts against William Stein and Phillip Hardiman; whether admission of Melvin Boyd's deposi-

tion testimony was proper; whether evidence relating to David Rascon's mental health was properly excluded; and whether statements made by David Rascon to the health care professionals who treated him at the Cook County Hospital was properly admitted. As a preliminary matter, we note that the standards by which we review denials of motions for judgment n.o.v. or for new trials are quite stringent. The standard of review for the denial of a judgment n.o.v. is a demanding one. This court has stated that, "[t]he motion should be denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that [people] in a fair and impartial exercise of their judgment may reach different conclusions." *McKinley v. Trattles,* 732 F.2d 1320, 1323–24 (7th Cir.1984) (quoting *Kolb v. Chrysler Corp.,* 661 F.2d 1137, 1140 (7th Cir.1981); *see Bass by Lewis v. Wallenstein,* 769 F.2d 1173, 1182 (7th Cir. 1985). The test for granting a new trial is equally stringent—we may reverse such a refusal only upon a finding that the errors at trial were sufficiently substantial to deny the defendants a fair trial. *Perry v. Larson,* 794 F.2d 279, 285 (7th Cir.1986); *see Taliferro v. Augle,* 757 F.2d 157, 161 (7th Cir.1985); 9 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 110.-08[3], at 124 (2d ed. 1983). With these standards in mind, we proceed to consider the issues presented to us for review.

### A. *Director Hardiman*

Phillip Hardiman is the Executive Director of the Cook County Department of Corrections. In this capacity, Director Hardiman oversees the day-to-day operation of the Cook County Jail and the RTU including supervision of the guards and the inmates. Additionally, he is responsible for formulation and execution of policy and rules and regulations in effect at the Cook County Jail. Tr. 231. According to the plaintiff, Phillip Hardiman is liable for the violation of David Rascon's constitutional rights by the guards under Hardiman's supervision. She alleges that Mr. Hardiman knowingly permitted the RTU to be operated without the disciplinary rules and regulations used in other parts of the facility. This conscious abrogation of the established disciplinary system, coupled with the failure to substitute any other system, permitted the infliction of ad hoc summary punishment upon the inmates by prison personnel. This approach to discipline in the RTU amounted, the plaintiff submits, to a policy of deliberate or reckless indifference for the safety of the prisoners, including Mr. Rascon. We must determine whether such a theory will support liability under section 1983 and, if so, whether the record supports such a finding in this case. Mr. Hardiman was sued in his individual and official capacity.

In *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983), this court stressed that "[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." (emphasis in original); *see also McBride v. Soos,* 679 F.2d 1223, 1227 (7th Cir.1982); *Adams v. Pate,* 445 F.2d 105, 107 (7th Cir.1971). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf-Lillie,* 699 F.2d at 869. In short, "[i]ndividual liability for damages under section 1983 is predicated upon personal responsibility." *Schultz v. Baumgart,* 738 F.2d 231, 238 (7th Cir. 1984).

Moreover, the Supreme Court has recently made clear that a showing of mere negligence on the part of state officials is insufficient to implicate an individual's due process rights for purposes of a claim under section 1983. *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Thus, it is not sufficient for a section 1983 plaintiff to show that a supervisory official was remiss in supervising the implementation of policy in force in an

institution. Rather, to establish a claim against a supervisory official, there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act. As this court said in *Smith v. Rowe*, 761 F.2d 360 (7th Cir.1985):

> To recover for damages under 42 U.S.C. § 1983, a plaintiff must establish defendant's personal responsibility for the claimed deprivation of a constitutional right. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981). However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.

*Id.* at 369 (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982)).

 To the extent that Mr. Hardiman is sued in his official capacity, this action operates as a claim against the government entity itself. *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *see Pembaur v. City of Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 283 (7th Cir.1986); *Schultz v. Baumgart*, 738 F.2d 231, 238–39 (7th Cir.1984); *Wolf-Lillie*, 699 F.2d at 870. It is well-settled that a claim against a state or local agency or its officials may not be premised upon a *respondeat superior* theory. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; *Rizzo v. Goode*, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976); *Malak*, 784 F.2d at 283; *Soderbeck v. Burnett County*, 752 F.2d 285, 292 (7th Cir.), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). "[T]ortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's 'official policy'...." *Pembaur*, 106 S.Ct. at 1298; *see Monell*, 436 U.S. at 691–95, 98 S.Ct. at 2036–38. Moreover, the Supreme Court has recently indicated that, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 105 S.Ct. at 2436; *see Malak*, 784 F.2d at 283. Thus, to state a claim against Director Hardiman, the plaintiff was required to show that the actions of the offending officers were taken pursuant to an official—albeit impermissible—policy.

At trial, Director Hardiman testified that there was a specific procedure in effect at the jail by which inmates could be disciplined. According to this written procedure, which was in effect in the main area of the jail, an inmate charged with a disciplinary infraction could expect that certain procedures would be followed. These procedures include a written charge, investigation of the charge, and notice and a hearing before a disciplinary board (which is conducted as an adversary proceeding so that an inmate is afforded an opportunity to call witnesses, to present evidence and cross-examine adverse witnesses), a record and a formal decision. Tr. 240–41.

Director Hardiman also testified that this procedure was effective in all areas of the jail except one—the RTU. The inmates in the RTU were treated differently from the general population of the jail. Tr. 245. As Officer Legenza testified, "[a] person with psychiatric problems cannot be trusted in a lockup cell by himself because of the fact of possible suicide and self-mutilation. That's why the psychiatrist must be spoken to first before any type of disciplinary action is taken against this particular inmate." Tr. 327. Psychiatric intervention in the RTU at the Cook County Jail is mandated by the federal consent decree entered into in *Harrington v. DeVito*, No. 74 C 3290 (N.D.Ill. Oct. 19, 1978). Accord-

ing to the further testimony of Officer Legenza:

> If the individual is too unstable to be disciplined, then that particular case or that particular charge will be dismissed and that person will be put in a dormitory that is designed for the people that have more severe problems than others. But by the same token, if that same person is fit for disciplinary action, the doctor or clinical psychologist will design a program to discipline this individual.

Tr. 329.

On redirect, plaintiff's counsel was able to elicit from Officer Legenza that the procedure employed with respect to RTU inmates was implemented on a *de facto* basis—it was not formally outlined in any of the rules and regulations in effect at the jail. Tr. 331–32. In essence, the defendants admitted that the formal procedures for disciplinary actions against inmates were suspended in the RTU in favor of what was characterized as an ameliorative policy of resolving the matter informally through the intervention of a mental health professional. According to the defendants, this procedure operated not as a deprivation of rights but "rather [as] an accommodation extended to the mentally ill." Appellants' Br. at 27.

There is, however, another provision of the rules and regulations with respect to discipline which does not seem to have been abandoned in the RTU. According to that provision:

> Disciplinary action is one of many essential elements in correctional treatment. When applied reasonably and with fairness it not only assists in protection of health, safety, and security of all persons within a correctional facility, but is also a positive factor in maintaining the morale of inmates and staff alike. No judicial decision precludes appropriate disciplinary action for misconduct that is imposed in a fair manner.

Tr. 247–48.

As noted at the beginning of this discussion, Mrs. Rascon argues that, when all formal procedures for processing disciplinary matters were abandoned in the RTU, an informal system of discipline filled the void. Mrs. Rascon contends that, far from indicating that RTU inmates received no punishment at all, the evidence indicates that covert, physical, summary punishment was substituted for the suspended formal disciplinary procedures. She argues that, where there is no formal system by which to discipline a class of inmates, corrections officers concluded that such measures are the only means by which to assure discipline in the facility.

This theory, if supported by competent evidence after a fair trial, could justify a finding of liability against Mr. Hardiman in his individual and official capacities. However, while this theory of liability can be rather succinctly stated at this point in the litigation, our examination of the trial record makes it disturbingly clear that this theory of liability was not clearly before the trial court throughout the litigation. Instead, it fully emerged rather painfully in the lengthy and disjointed sessions of the magistrate and counsel as the trial progressed. Indeed, it is quite apparent that the magistrate did not realize the gist of the plaintiff's theory until well into the trial.

Under these circumstances, we have substantial doubts that the defendant Hardiman had the opportunity to present a complete defense. The situation is made worse by the magistrate's refusal to permit additional evidence when the plaintiff's position was finally evident. We are unable to say from this record that defendant Hardiman had the opportunity to address fully the alleged policy's existence. The problem is compounded by the fact that, after the argument on the policy instruction, the magistrate would not allow presentation of further evidence on the subject. Although it was clear to all that defense counsel and, at times, the magistrate, had not understood the plaintiff's theory, the magistrate refused to reopen the case to allow introduction of more evidence on the matter.

■ This problem was further worsened by the magistrate's action in taking the case with respect to Director Hardiman and Sheriff Elrod from the jury and then returning it to them later. While this action is not error per se, it is likely that, in this case, it had a substantial effect on the jury. This case clearly meets the standard for a new trial. We reverse because we find that the action taken below was "inescapably wrong." *Taliferro,* 757 F.2d at 161. Accordingly, the jury's verdict cannot stand, and we remand for a new trial on the issue of Director Hardiman's liability.

### B. *Officer Stein*

Defendant William Stein is not alleged to have personally inflicted any injury upon Mr. Rascon. Rather, the evidence showed that he was seated at a desk on the third floor at the time of the incident involving Mr. Rascon and the officers. The plaintiff submits that Mr. Stein was able to observe the incident, but he did not intervene. The jury awarded no compensatory damages and $1,000 in punitive damages against Mr. Stein. He claims that the evidence was insufficient, as a matter of law, to support the verdict.

The leading case treating the duty of an officer to intervene to prevent summary punishment was decided by this court. In that case, *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972), this court stated:

We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty

to enforce the laws and preserve the peace.

*Id.* at 11. The reasoning of the *Byrd* court has been adopted by other courts considering an officer's duty to intervene. *See Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986); *Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *Putnam v. Gerloff,* 639 F.2d 415, 423 (8th Cir.1981); *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976); *Skevofilax v. Quigley,* 586 F.Supp. 532, 543 (D.N.J.1984); *McQurter v. City of Atlanta,* 572 F.Supp. 1401, 1415 (N.D.Ga.1983); *Davidson v. Dixon,* 386 F.Supp. 482 (D.Del.1974), *aff'd,* 529 F.2d 511 (3d Cir.1975). We have found no cases rejecting this reasoning.

■ We do not retreat from this general principle of law. However, we believe that, under the circumstances of this case, the question of Mr. Stein's liability was not fairly presented to the jury. The jury received but one cryptic instruction with respect to Mr. Stein's liability:

One who is given the badge of authority of a corrections officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third peson in his presence or otherwise within his knowledge. This responsibility exists as to non-supervisory and supervisory officers who are present at the scene.

Tr. 860. The evidence of precisely what Mr. Stein saw is, even when all possible inferences in favor of the plaintiff are drawn, extraordinarily thin. It is entirely possible that the jury could have reached a determination of liability against Mr. Stein on the impermissible theory that he had been negligent in failing to perceive that the other officers were inflicting illegal summary punishment rather than using lawful force to subdue a violent inmate. The former determination would not support liability under section 1983. *See Davidson v. Cannon,* — U.S. ——, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *see also Daniels,* 106 S.Ct. at 663.

We emphasize that we do not condone the actions of the officer who willfully "looks the other way" and permits action which he knows or should know is unlawful. However, the issue must be fairly tried and submitted to the jury under instructions which ensure such a fair determination.

### C. *Boyd's Deposition*

The appellants argue that the district court should not have accepted Mr. Boyd's deposition into evidence. They argue that there was not a proper showing that Mr. Boyd was unavailable to testify at the trial, that certain portions of the deposition were prejudicial and should have been excluded and that extrinsic evidence with respect to Mr. Boyd's credibility were wrongfully excluded.

Fed.R.Civ.P. 32 provides, in pertinent part that:

(a) At the trial ... any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with ... the following provisions:

&ast; &ast; &ast; &ast; &ast; &ast;

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

&ast; &ast; &ast; &ast; &ast; &ast;

(D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena....

■ The party seeking to admit the deposition, must prove that the requirements of the rule have been met. *United States v. Pelton,* 578 F.2d 701 (8th Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). At trial, plaintiff called a private investigator and process server, Michael R. Chiapetta, who had been hired to serve Boyd, to testify concerning his good faith and diligent efforts to serve Boyd. The magistrate stated that she was "satisfied that diligent efforts were made to subpoena Boyd and that he was not available to testify under Rule 32(a)(3)(D)." R. 166 at 10. The record supports this conclusion. Moreover, the appellants' attorney was present at the deposition and was afforded an opportunity to cross-examine Mr. Boyd at that time. As long as the deposition testimony meets the requirements of the Federal Rules of Evidence, admission of deposition testimony is within the sound discretion of the trial court. *Reeg v. Shaughnessy,* 570 F.2d 309 (10th Cir.1978); *United States v. Bowen,* 411 F.2d 923 (5th Cir.1969); *see Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 844 (7th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). We find that the deposition testimony of Mr. Boyd was properly admitted.

■ Appellants' claim that they were unduly prejudiced by the nonappearance of Mr. Boyd and by admission of Mr. Boyd's testimony that prison beatings were frequent and common occurrences is without merit. We agree with the district court that Boyd's testimony, Tr. 184–85, with respect to other beatings at the facility was essential to Rascon's claim of a policy of substituting summary punishment for disciplinary procedures. The appellants had every opportunity to cross-examine Boyd with respect to his allegations at the time of the deposition. They took full advantage of that opportunity. Moreover, they did not object to the scope of Mr. Boyd's testimony. Failure to object at the time of the deposition results in waiver of those objections and renders the testimony admissible. *See Kirschner v. Broadhead,* 671 F.2d 1034 (7th Cir.1981).

■ Appellants also argue that they were improperly prevented from introducing evidence with respect to the details of crimes to which Boyd had pled guilty. We disagree. Deposition testimony is subject to the same standards for impeachment as live testimony. Thus, "[f]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or

established by public record during cross-examination...." Fed.R.Evid. 609(a). Accordingly, portions of Boyd's deposition testimony which revealed that he was a convicted child molester were admitted. Boyd never denied the convictions. Appellants cross-examined him at length regarding this conviction. The actual details of the crime as detailed in the transcript of the Change of Plea Hearing are irrelevant to his testimony in his deposition. There was no basis upon which to permit entry of external evidence regarding the charges underlying Boyd's conviction. Exclusion of this external material was proper.

### D. *Evidence of Rascon's Mental Health*

Appellants argue that the trial court improperly disallowed testimony which would have established that the appellants were aware of Mr. Rascon's background at the time of the incident. They argue that testimony that they were aware of Rascon's suicide attempt, his history of mental illness and that he was charged with attempted arson would have helped to justify their actions in subduing Rascon on the stairwell.

In this case, the magistrate refused to receive evidence of the decedent's mental health history because she believed it to be of little probative value especially considering that there was other substantial evidence admitted with respect to Rascon's mental and emotional health. Tr. 119, 196, 304. The magistrate indicated that she refused to admit the history "be-cause to classify Rascon as a 'mental case' would suggest that it would be reasonable to subdue him based on a supposed status rather than his conduct at the time." R. 166 at 21. We cannot disagree with this assessment.[3] Fed.R.Evid. 403 dictates that relevant evidence be excluded if its probative value is substantially outweighed by its prejudicial effect. Relevant evidence may be excluded under this rule in order to ensure against the "likelihood that the evidence will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented...." *West v. Love*, 776 F.2d 170, 174 (7th Cir.1985) (quoting *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985)). Further, this court has recognized that the "trial court's balancing of probative value and unfair prejudice is highly discretionary and its decision on admissibility will be accorded 'great deference.'" (*West*, 776 F.2d at 174 (citing *Medina*, 755 F.2d at 1274)).

### E. *Hospital Records*

Appellants contend that the admission into evidence of Rascon's hospital records, which contained statements by Rascon to the treating physician and nurse regarding the source of his injuries was error.

At trial, Dr. Tabib, Rascon's treating physician at the Cook County Hospital on March 29, 1980, was permitted to testify, over objection, that Rascon was "alleged to have been beaten by authorities," Tr. 377, and that his injuries resulted from

---

3. The appellants also assert that they were improperly prevented from impeaching Mrs. Rascon's testimony with respect to her husband's mental health and with respect to the non-payment of David Rascon's $9,300 hospital bill. First, the testimony regarding Rascon's mental health was properly excluded. Mrs. Rascon testified on direct only as to the physical health of her husband—she discussed only his height, weight and the general condition of his health. Therefore, there was no basis upon which the defendants could inquire into Rascon's mental health on cross-examination. Second, as to the hospital bill, Mrs. Rascon testified that she had been billed for her husband's treatment. There was evidence at trial that the bills were still unpaid. The appellants claimed that the county had agreed to absorb the costs of Rascon's treatment and that the Rascons did not incur any personal liability for the bill. If the bill has been paid as the appellants claim, that information is not part of the record on appeal. We do not believe it was error to prevent the defendants from cross-examining Mrs. Rascon as to a matter which was irrelevant to her understanding of the status of the bill. Whether the county intended to absorb the cost or not, Mrs. Rascon was continually billed for the expenses. As of the trial in July 1983—three years after the date that Rascon was hospitalized—the bill had not been paid by the county.

a beating inflicted by police officers. Tr. 378–79. Fed.R.Evid. 803(4) provides that, "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. Statements indicating the cause of the injury are generally admissible. *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979). However, there is some authority that statements as to the cause of the injury must be distinguished from statements assessing fault for the injury. *Roberts v. Hollocher*, 664 F.2d 200 (8th Cir. 1981); *United States v. Narciso*, 446 F.Supp. 252, 289 (E.D.Mich.1977). We do not find it necessary to rule definitively on the validity of this distinction in this case. Upon reviewing the record, we are persuaded that the admission of the statements indicating that the officers were at fault was, at most, harmless error. First, even if the authorities had not been named, the statements indicating cause of injury—beating—would have been admissible. The jury would have been able to draw the inference that the beating had been inflicted by the only other parties to the incident—the officers. Second, at the close of Dr. Tabib's testimony, the magistrate specifically instructed the jury that the doctor's testimony was "not evidence that [Rascon] was beaten or that he was beaten by these defendants." Tr. 392.

### III

The trial in this case was far from perfect. Upon consideration of the entire record, we are convinced that many errors were made which rendered part of the verdict unfair. Accordingly, we hold the following: The denial of the motion for a new trial with respect to Director Hardiman's liability was wrong. The question of Mr. Stein's liability must also be retried. The admission of Mr. Boyd's deposition testimony was proper; the exclusion of certain evidence with respect to Mr. Rascon's mental health background was proper; any error in admitting evidence that Mr. Rascon informed treating health care professionals that he had been beaten by the police was, at most, harmless. Accordingly, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision. Circuit Rule 18 will apply. The parties will bear their own costs of this appeal.

So ORDERED.