Farida SADRUD–DIN, as Administrator of the Estate of Selena Johnson, Plaintiff,

v.

CITY OF CHICAGO, a local public entity, and Unknown Police Officers A, B, D, E, F, G, H, I and K, Marlin Nimocks, Unknown Supervisory Police "C" and "J" and Chicago Police Commander James Ivory, Sergeant Bonds and Sergeant George Boone, individually and as Supervisors of the Chicago Police Department, Defendants.

No. 89 C 6903.

United States District Court, N.D. Illinois, Eastern Division.

April 24, 1995.

James T. Newman, Cooney & Conway, Chicago, IL, Farida Sadrud–Din est Selena Johnson.

Yvonne Spradley La Grone, John F. McGuire, Thaddeus S. Machnik, City of Chicago, Law Dept. Corporation Counsel, Chicago, IL, for Marlin Nimocks, James Ivory, George Boone, individually and as supervisor of Chicago Police Dept.

Gail A. Niemann, Diane M. Pezanoski, Stephen I. Peck, City of Chicago, Dept. of Law, Corp. Counsel, Chicago, IL, for Sergeant Bonds.

Justin Paul Erbacci, Margaret Ann Carey, Patricia Jo Kendall, Patrick J. Rocks, Jr., City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for City of Chicago, IL, a local public entity.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Farida Sadrud–Din is the Administrator of the Estate of Selena Johnson, deceased. Plaintiff brings this case solely in her representative capacity as the adminis-

trator of the estate against the City of Chicago and various individual police officer defendants. Plaintiff's claims arise from the events surrounding the murder of Selena Johnson in her home by her estranged husband, Chicago police officer Edward Johnson, on September 13, 1988. Plaintiff, at the time of her death, was also a Chicago police officer.

Currently before the court are defendant City's motion for summary judgment, defendant Bonds' motion for summary judgment, defendants Ivory, Boone and Nimocks' joint motion for summary judgment and defendants' joint motion to strike certain exhibits and portions of plaintiff's Amended 12N Statement. For the reasons stated below, defendants' joint motion to strike is granted in part and denied in part, defendant City's motion for summary judgment is denied, defendant Bonds' motion for summary judgment is denied, the individual defendants' joint motion for summary judgment is denied as to defendants Ivory and Boone, and granted as to defendant Nimocks.

## BACKGROUND

At all times relevant to this case, Selena and Edward Johnson were police officers employed by the Chicago Police Department. Selena and Edward were married on February 19, 1973. Selena Johnson filed for divorce on June 29, 1988 on the ground of mental cruelty.[1] On July 12, 1988, in connection with the divorce proceedings, Selena and Edward entered into an agreed order restraining each party from assaulting, beating, striking, abusing, molesting, threatening, or otherwise harassing the other party.[2] On June 29 and August 12, 1988, plaintiff obtained emergency orders of protection against Edward Johnson prohibiting him from committing physical abuse, harassment,

interference with personal liberty and entering or remaining at Selena's home.[3]

Plaintiff contends that on May 30, 1988, as Selena and Edward Johnson were driving home, Edward reached for his gun, held the hammer of it back with his thumb and threatened to kill Selena.[4] Plaintiff alleges that two Chicago police officers then pulled up in their squad car, interrupted the assault, saw the gun in Edward's hand, were informed of Edward's death threats by Selena, yet did not arrest or disarm Edward, but instead drove Selena home and allowed Edward to follow in their car.[5]

On August 4, 1988, plaintiff alleges that Edward Johnson, in violation of the June 29, 1988 order of protection, entered into Selena's house and physically and verbally abused her.[6] On August 12, 1988, Selena obtained a further order of protection and filed a complaint against Edward with the Chicago Police Department's Office of Professional Standards ("OPS").[7] OPS ruled the incident "not sustained," meaning that it found that there was insufficient evidence to prove that the incident had occurred.[8]

On August 29, 1988, Selena met with Edward's commanding officer, defendant Commander James Ivory, and informed defendant Ivory about Edward's abusive behavior over the past several months, including that Edward had threatened her with a gun and had punched her in the mouth, and about the complaints she had filed with OPS.[9] In response, Commander Ivory told Selena to submit a report in writing detailing all the abusive incidents.[10] Ivory left on vacation the following Monday, September 5, 1988. On the previous Friday, September 2, 1988, Selena submitted a letter to Commander Ivory detailing the abusive incidents from May

1. *Defendant City 12M Statement,* Exhibit 2, Petition for Dissolution of Marriage.

2. *Id.,* Exhibit 3.

3. *Plaintiff's Amended 12N Statement,* Exhibit C, at 2–3, 11–12, 16–18 and 26.

4. *See Id.,* Exhibit C, at 5, 9, 10, 13(4); Exhibit H; and Exhibit G at 42.

5. *See Id.,* Exhibit C, at 9.

6. *Id.,* Exhibit B, at 2–4.

7. *Id.,* Exhibit B, C.R. 16 2886.

8. *Id.,* Exhibit B, Summary of Investigation.

9. Ivory Dep. at 41–43.

10. *Id.* at 44.

of 1988 through August 29, 1988.[11]   In the letter, Selena asked Commander Ivory to take any action he could because she was in fear for her life.[12]   In addition to sending the letter to Commander Ivory, plaintiff alleges that Selena sent copies of this letter to her own Chicago police commander, OPS, and the Internal Affairs Division of the Chicago Police Department.[13]

On September 11, 1988, plaintiff alleges that Edward Johnson again threatened Selena's life and physically abused her in her home.[14]   In response to a complaint of violence at Selena's home, Officers Nimocks and McGinnis arrived at the scene to investigate.[15]   Selena told Nimocks that Edward had threatened her life and that she had an order of protection entered against Edward.[16]   Pursuant to the policy of the Chicago Police Department which requires a supervisor to be notified and sent to the scene when an off-duty police officer is accused of a crime, Officer Nimocks requested that a supervisor be sent to the scene.[17]   Officer Nimocks' sector sergeant, defendant Sergeant George Boone, shortly thereafter arrived at the scene.   Sergeant Boone knew where Edward was located and talked with him on the phone.[18]   Boone told Edward on the phone that he knew Edward slapped Selena around and that Selena wanted him arrested.[19]   Boone did not arrest Edward Johnson.   Nimocks did not arrest Edward because he did not know where he was and he was not given any instructions to do so by Boone, the supervisory officer at the scene.[20]

Two days later, on September 13, 1988, Edward Johnson entered into Selena's home, shot Selena eight times and killed her.   Later that same day, Edward Johnson killed himself.

**11.**   *12N Statement,* Exhibit H.

**12.**   *Id.*

**13.**   Bogira Dep. at 147.

**14.**   *See 12N Statement,* Exhibit D, Exhibit F; Nimocks Dep. at 34; Exhibit 1 of Nimocks Dep, Police Report IL–396985;  Boone Dep. at 47.

**15.**   *12N Statement,* Exhibit D; Nimocks Dep. at 34.

**16.**   Nimocks Dep. at 45–47.

## ANALYSIS

### I.   *Motion to Strike*

Defendants have filed a joint motion to strike certain exhibits and portions of plaintiff's Amended 12N Statement.   More specifically, defendants move to strike portions of the deposition of Steven Bogira, a reporter for the *Reader,* a weekly newspaper distributed in the Chicago area;  a *Reader* newspaper article written by Bogira entitled "Officers in Trouble;"[21]   the September 2, 1988 letter from Selena Johnson to Commander James Ivory;  statements of Selena Johnson contained in court files;  and an anonymous letter received by Bogira following publication of his *Reader* article.

### A.   *Anonymous Letter*

▋   Plaintiff acknowledges that the anonymous letter received by Bogira is presently inadmissible for the purpose of responding to defendants' motions for summary judgment because the police officer who wrote the letter has not come forward to authenticate it.   Therefore, defendants' motion to strike the anonymous letter for the purpose of defendants' motions for summary judgment is granted.   The court will therefore not consider the information contained in the anonymous letter in ruling on defendants' motions.

### B.   *Deposition Testimony of Bogira*

▋   Defendants move to strike portions of Bogira's deposition testimony regarding statements made by various Chicago police officers during interviews with Bogira.   Defendants argue that the police officer's statements about which Bogira testified in his deposition are inadmissible hearsay.

**17.**   *Id.* at 42–43.

**18.**   Boone Dep. at 47–48.

**19.**   *Id.* at 46.

**20.**   Nimocks Dep. at 51.

**21.**   *See 12M Statement,* Exhibit A, *Officers in Trouble, Chicago Reader,* Volume 18, No. 14 (March 10, 1989).

While it is true that under Rule 56(e), the court may not consider inadmissible hearsay statements on a motion for summary judgment, and that many of the statements contained in the challenged newspaper article and in Bogira's notes might initially appear to be double hearsay—out-of-court statements by employees of the Chicago Police Department later repeated by a reporter—the court finds that these statements are admissible.

First, the statements made to Bogira by Officers Nimocks, Ivory, Bonds and Boone, offered here by plaintiff, are excluded from the definition of hearsay by Rule 801(d)(2)(A) of the Federal Rules of Evidence as admissions of a party opponent to the plaintiff.

Second, as to the statements made by non-party police officers, the court finds that these statements are admissible against defendant City of Chicago under Rule 801(d)(2)(D). Rule 801(d)(2)(D) excepts from the hearsay rule "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship." *Id.* All of the officers quoted in Bogira's article were employees of the Chicago Police Department at the time these statements were made. In addition, their statements concerned matters within the scope of their employment, including their working relationship with Edward Johnson; observations of Edward's physical and emotional condition on the job; and the way the police handled the various alleged abusive situations involving Selena and Edward at issue in this case.

## C. *Reader Article and Bogira's Notes*

■ With regard to the actual *Reader* article and Bogira's notes made during the preparation for the article, the court finds that the portions of the article and notes containing the statements made by the individual defendants and any employees of the Chicago Police Department constitute admissible recorded recollections, and were therefore properly read into evidence by Bogira during his deposition pursuant to Rule 803(5).

Rule 803(5) defines a recorded recollection as:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

In this case, Bogira testified that he recalled conducting a series of interviews with various Chicago police officers between September of 1988 and March of 1989, but at the time of his deposition, had an insufficient recollection of the substance of those interviews to enable him to fully and accurately testify about those conversations. In addition, Bogira testified that he accurately transcribed the notes upon which the article was based immediately after conducting the interviews when the interviews were still fresh in his mind.[22] Therefore, the court finds that the *Reader* article and Bogira's notes satisfy the criteria under Rule 803(5) of the Federal Rules of Evidence for recorded recollection and that the portions containing the statements of the police officers were properly read into the record at Bogira's deposition.

## II. *Defendants' Motions For Summary Judgment*

■ Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). In ruling on a motion for summary judgment, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine

22. Bogira Dep. at 13–14.

the truth of the matter, but to determine whether there is a genuine issue for trial.

■ A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

Under 42 U.S.C. § 1983 a plaintiff has a remedy for any deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States. In this case plaintiff grounds her § 1983 action on an asserted violations of the Fourteenth Amendment. Count I alleges that defendants City and certain police officers deprived Selena Johnson of her due process rights guaranteed by the Fourteenth Amendment. More specifically, plaintiff claims that defendants knew of the protective orders prohibiting Edward Johnson from entering into Selena's home and physically abusing her, and despite this knowledge and Selena's repeated pleas for help from the Chicago Police Department, the City and its officers deliberately refused to protect Selena from her estranged husband, who was a Chicago police officer, by failing to take any of the following actions: 1) ordering Edward Johnson to submit to a medical or psychological examination despite their alleged knowledge of his propensity to commit violence and of his alcoholism; 2) revoking Edward Johnson's arrest authority, thereby revoking his authority to carry a weapon (Edward Johnson murdered Selena with his service revolver); 3) investigating Selena's complaints of continued death threats, harassment and violence by Edward Johnson over a four month period; or 4) arresting and incarcerating Edward Johnson for his acts of violence against Selena Johnson.[23]

**23.** Fifth Amended Complaint, Count I, ¶ 27.

### A. Defendant City's Motion

Defendant City argues that the City had no constitutional duty to protect Selena from Edward as a matter of law because she was not in the custody or control of the Chicago Police Department nor did the City affirmatively act to place Selena in a position of danger. In addition, the City argues that even if a "special relationship" existed between the City and Selena requiring the City to protect Selena from Edward, the City is still entitled to summary judgment on plaintiff's due process claims because plaintiff cannot establish that the deprivation of Selena's rights was caused by an official policy, custom or practice of failing to investigate or arrest police officers accused of spousal abuse or battery.

The Supreme Court has held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). The Court concluded that as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney,* 489 U.S. at 197, 109 S.Ct. at 1004. However, even though the Due Process Clause imposes no affirmative obligation of the State to provide the general public with adequate protective services, such a duty may arise out of "special relationships" created or assumed by the State with respect to certain individuals. *DeShaney,* 489 U.S. at 200–02, 109 S.Ct. at 1005–06. A special relationship arises in two situations: "where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Reed v. Gardner,* 986 F.2d 1122, 1125 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993) (citing *DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006 ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them....")).

■ In this case, the court finds that plaintiff has presented evidence which when considered in plaintiff's favor is sufficient to establish that a special relationship existed between the City and Selena Johnson because the City played a part in placing Selena Johnson in the position of danger which resulted in her murder. Plaintiff has presented evidence indicating that supervisory officers in the Chicago Police Department knew that Edward Johnson, a Chicago police officer—armed by the City's police department, given access to a squad car by the City's police department, conferred arrest power by the City's police department, and supervised by the City's police department—threatened the life of Selena Johnson and committed violent acts against her in violation of judicial orders of protection. Yet, the City did not apprehend or act in any way to deter Edward Johnson. By failing to arrest Edward on various occasions between May and September of 1988, knowing that he threatened Selena's life, and violated orders of protection, the court finds that viewing the evidence in a light most favorable to the plaintiff, the City had an affirmative duty to protect Selena under the Fourteenth Amendment. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1521 (7th Cir.1990); *Reed*, 986 F.2d at 1127.[24] By allowing Edward Johnson to continue to carry his police-issued weapon knowing the information provided by Selena Johnson, the City affirmatively contributed to the circumstances which resulted in Edward Johnson murdering Selena Johnson with that weapon.

In addition, the court finds that plaintiff has presented evidence sufficient to create a question of fact regarding whether the City's alleged deprivation of Selena's rights was caused by the Chicago Police Department's official policy, custom or practice of failing to investigate complaints or to arrest police officers accused of spousal abuse or battery, constituting "deliberate indifference to the rights of the decedent." *See Gibson*, 910 F.2d at 1521 (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ The City of Chicago may not be held liable for the unlawful acts of its police officers under 42 U.S.C. § 1983 solely on a theory of respondeat superior. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509 (7th Cir.1993) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); *Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1844, 128 L.Ed.2d 470 (1994)). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an

---

24. As this court explained in a prior opinion in this case, *Muhammad v. City of Chicago*, No. 89 C 6903, 1991 WL 5803 (N.D.Ill. Jan. 15, 1991), this holding is consistent with *DeShaney*, 489 U.S. at 189, 109 S.Ct. at 998. As the Seventh Circuit stated in *Gibson v. City of Chicago*, an analogous case:

> Our disposition is also quite compatible with *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998 [103 L.Ed.2d 249] (1989). In *DeShaney*, the Supreme Court held that county authorities who had learned that a child was at risk of being abused by his father committed no constitutional violation by their failure to act to prevent the abuse. The Court reasoned that nothing in the due process clause requires the state to protect its citizens' life, liberty, and property 'against invasion by *private* actors.' *Id.* [489 U.S. at 195] 109 S.Ct. at 1003 (emphasis supplied). In determining that the county officials had not violated any constitutional right of the

victim, the Court expressly noted that the 'state had 'played no part in [the] creation [of the dangers faced by the victim], nor did it do anything to render him more vulnerable to them.' *Id.* [489 U.S. at 201] 109 S.Ct. at 1006. It is in this important respect that the present case differs considerably from *DeShaney*. At this point in the litigation, where we are obliged to accept as true the plaintiff's factual allegations, the City is alleged to have played a part in both creating the danger (by training and arming [the police officer]) and rendering the public more vulnerable to the danger (by allowing [the police officer] to retain his weapon and ammunition ...).

910 F.2d at 1521 n. 19.

Similarly, in this case, because the plaintiff's evidence establishes the possibility that the City played a role in creating the danger which allegedly resulted in Selena's death, the City's motion for summary judgment for lack of a special relationship must be denied.

entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2040. In addition, a plaintiff bringing a § 1983 claim against a municipality must show that the policy or custom proximately caused the alleged constitutional deprivation. *McNabola*, 10 F.3d at 510 (citations omitted).

■ In this case, plaintiff points to no specific written guidelines or ordinances directing police officers not to investigate allegations of spousal abuse and battery by other police officers and not to arrest police officers accused of committing acts of battery. Plaintiff is instead arguing that the City has an unwritten policy or custom of failing to investigate these types of incidents and failing to arrest police officer offenders.

"In the absence of a formal policy, [plaintiff] must rely on *Monell's* custom or practice prong to establish a basis for municipal liability." *McNabola*, 10 F.3d at 511. "*Monell* authorizes the imposition of liability against a municipal entity 'for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels.'" *Id.* (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2036). A practice of unconstitutional conduct, although lacking formal approval may provide a basis for municipal liability "if the plaintiff can establish that the policymaking authority acquiesced in a pattern of unconstitutional conduct." *McNabola*, 10 F.3d at 511 (citing *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993)). "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *McNabola*, 10 F.3d at 511 (citations omitted). "The longstanding or widespread nature of a particular practice would support the inference that policymaking officials 'must have known about it but failed to stop it.'" *Id.* (quoting *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir.1989)).

The court finds that there is sufficient evidence in this case to create an issue of material fact concerning the liability of the City of Chicago based on *Monell's* custom or practice prong. Plaintiff has presented evidence that the alleged deficiencies in the City of Chicago's disposition of spousal battery cases involving police officer offenders reflected a deliberate indifference to its citizens constitutional rights. *See City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205. The record fairly indicates the possibility that the City failed to promptly investigate complaints of spousal battery involving police officers, to arrest police officer offenders, and to impose discipline in appropriate cases. Plaintiff's evidence of over a half-dozen instances in which Selena Johnson's complaints of spousal battery and death threats by Edward Johnson were ignored by individuals in supervisory positions in the Chicago Police Department creates a factual issue regarding whether the City of Chicago was on notice of a pattern of constitutional violations resulting from the failure to pursue spousal battery complaints involving police officer offenders.

Defendant City also argues that plaintiff cannot prove as a matter of law that the City's failure to investigate Selena's complaints of spousal battery and to arrest Edward would have prevented Selena's death. The City contends, citing *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), that the link between the City's failure to intervene and Selena's murder is too tenuous of a link on which to premise the City's liability under § 1983.

The court rejects defendant City's argument and, as the Seventh Circuit held in *Gibson*, finds that the asserted linkage between the government action and the alleged deprivation in this case is stronger than it was in *Martinez* "because in this case the police department played a more significant role in creating the potential danger." *Gibson*, 910 F.2d at 1521–22 n. 19. In *Martinez*, parole officials were sued under § 1983 for the alleged causal role in the murder of a girl at the hands of a parolee whom the officials had released. The Supreme Court upheld a dismissal of the complaint on the grounds that the parole board's actions were too attenuated from the injury to conclude that the parole officers had deprived the victim of a constitutionally protected interest. *Martinez*, 444 U.S. at 285, 100 S.Ct. at 559.

In this case, as in *Gibson*, the City "affirmatively trained and outfitted one of its employees with the means to exercise deadly force, yet failed to recover that equipment from its employee even after it [allegedly knew] that the employee was unfit to exercise police authority." *Gibson*, 910 F.2d at 1522 n. 19 (citing *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982) ("If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.")). In addition, the Court in *Martinez* suggested that the linkage between the government action and the ultimate injury might be greater if the government is aware of danger to a particular individual, as in this case, as opposed to society at large. 444 U.S. at 285, 100 S.Ct. at 559. Therefore, the court concludes that defendant City's motion for summary judgment based on plaintiff's failure to establish the City's § 1983 liability as a matter of law is denied.

### B. *Supervisory Liability*

▊▊▊ In order to hold a supervisor individually liable under § 1983 for an alleged violation of Selena Johnson's due process rights, plaintiff must prove that the supervisor was personally involved in the allegedly wrongful conduct and acted with recklessness or deliberate indifference to plaintiff's constitutional rights. *Gibson*, 910 F.2d at

1523. "For recklessness in the constitutional sense, the state actor must ignore a known and significant risk of death." *Ross v. United States*, 910 F.2d 1422, 1433 (7th Cir.1990) (citing *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989)). In this case, the court finds, as explained below, that plaintiff has pleaded sufficient facts and presented sufficient evidence for a jury to conclude that defendants Ivory, Boone and Bonds acted in a reckless manner and consciously chose a course of action that ignored the risk of Selena's death at Edward's hands. *See Ross*, 910 F.2d at 1433. The court also finds, however, that plaintiff has failed to present any evidence indicating that defendant Nimocks acted in reckless disregard for plaintiff's constitutional rights when responding to the call of domestic violence at the Johnson home on September 11, 1988.[25]

### 1. *Defendant James Ivory*

As to the liability of Edward's commanding officer, defendant James Ivory, plaintiff has presented evidence that defendant Ivory was aware the Edward Johnson had threatened Selena Johnson's life, yet failed to take any disciplinary action against Edward Johnson. For example, plaintiff presented a complaint signed by defendant Ivory that Selena Johnson had filed with the Chicago Police Department against Edward Johnson stating that

---

**25.** The court also concludes that qualified immunity does not shield defendants Ivory, Bonds and Boone from liability as a matter of law. Qualified immunity shields governmental officials performing discretionary functions from civil liability if the conduct complained of "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official is protected by qualified immunity is determined by the objective reasonableness of the action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citation omitted).

In this case, the court finds that under plaintiff's version of the facts, detailing the manner in which these defendants responded to Selena's complaints about Edward Johnson's violent behavior, the actions of these defendants were not

objectively reasonable in light of the law at the time these actions were taken. It was clearly well-established before 1988, and reaffirmed on May 23, 1988, the date the Seventh Circuit sitting *en banc* issued its opinion in *Archie v. City of Racine*, 847 F.2d 1211 (7th Cir.1988), that a citizen in peril for her life had a constitutional right to be protected by the state from a danger which the state was responsible in part for creating. *See Archie*, 847 F.2d at 1223 ("When that state puts a person in danger, the Due Process Clause requires the state to protect him to the extent of ameliorating the incremental risk.") (citing *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1971); *White v. Rochford*, 592 F.2d 381 (7th Cir.1979); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982); *Walker v. Rowe*, 791 F.2d 507 (7th Cir.1986); *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 1986)). Accordingly, defendants Ivory, Bonds and Boone are not entitled to the defense of qualified immunity at this time.

he had beaten her and pulled a gun on her on August 4, 1988.[26]

In addition, it is undisputed that on August 29, 1988, Selena met with Ivory, and informed him about Edward's abusive behavior over the past several months, including that Edward had threatened her with a gun and had punched her in the mouth, and about the complaints she had filed with OPS.[27] Commander Ivory's response was requesting Selena to submit a report in writing detailing all the alleged abusive incidents. On September 2, 1988, Selena submitted a letter to Commander Ivory detailing the abusive incidents from May of 1988 through August 29, 1988.[28] In the letter, Selena asked Commander Ivory to take any action he could because she was in fear for her life.[29] Ivory did not take any action against Edward Johnson in response to Selena's complaints. Therefore, the court concludes that because there is a material factual dispute regarding whether defendant Ivory acted in reckless disregard for Selena's constitutional rights, defendant Ivory's motion for summary judgment must be denied.

### 2. Defendant George Boone

As to defendant Boone, the court also finds that plaintiff has presented sufficient evidence to create a question of fact regarding whether Boone acted in a reckless manner when deciding not to arrest Edward Johnson on September 11, 1988. On September 11, 1988, plaintiff alleges that Edward Johnson again physically abused Selena in her home and threatened to kill her.[30] In response to a complaint of violence at Selena's home, Officers Nimocks and McGinnis arrived at the scene to investigate.[31] Selena told Nimocks that Edward had threatened her life and that she had an order of protection entered against Edward.[32]

Pursuant to the policy of the Chicago Police Department which requires a supervisor to be notified and sent to the scene when an off-duty police officer is accused of a crime, Officer Nimocks requested that a supervisor be sent to the scene.[33] Officer Nimocks' sector sergeant, defendant George Boone, then arrived at the scene. According to the evidence presented by the plaintiff, Sergeant Boone knew that Selena had an order of protection against Edward, that Edward had a history of abusing Selena and that Edward had threatened Selena's life.[34] Sergeant Boone also knew where Edward was located and talked with him on the phone.[35] Boone told Edward on the phone that he knew Edward slapped Selena around and that Selena wanted him arrested.[36] Boone did not arrest Edward Johnson. Therefore, the court concludes that because there is a factual dispute regarding whether defendant Boone acted in reckless disregard for Selena's constitutional rights in failing to arrest Edward Johnson after the September 11, 1988 incident, defendant Boone's motion for summary judgment must be denied.

### 3. Defendant Curtis Bonds

As to Edward's immediate supervisor, tactical Sergeant Curtis Bonds, the court concludes that there is also a factual dispute regarding whether Bonds acted with reckless indifference to plaintiff's constitutional rights. For example, plaintiff alleges that Bonds stated in an interview with *Reader* reporter Steve Bogira that 1) he knew that Edward was an alcoholic yet failed to intervene to get Edward any treatment;[37] 2) Edward told him about the May 30, 1988 incident during which Edward pulled a gun

---

26. *12N Statement,* Exhibit B.

27. Ivory Dep. at 41–43.

28. *12N Statement,* Exhibit H.

29. *Id.*

30. *See Id.,* Exhibit D, Exhibit F; Nimocks Dep. at 34; Exhibit 1 of Nimocks Dep, Police Report IL–396985; Boone Dep. at 47.

31. *Id.,* Exhibit D; Nimocks Dep. at 34.

32. Nimocks Dep. at 45–47.

33. *Id.* at 42–43.

34. Nimocks Dep. at 46–48; Exhibits 1 and 2.

35. Boone Dep. at 47–48.

36. *Id.* at 46.

37. Bogira Dep. at 61–63.

on Selena and threatened her life, and that the police intervened yet failed to take any disciplinary action against Edward;[38] 3) all of his superiors knew about the May 30, 1988 incident yet failed to take any action;[39] 4) he knew that Edward was driving by Selena's house while on duty;[40] and 5) police officers have a tendency to try to protect each other or not call things the way they really are when it comes to another officer abusing his spouse.[41] Therefore, the court concludes that because there is a factual dispute regarding whether defendant Bonds acted in reckless disregard for Selena's constitutional rights in failing to discipline Edward Johnson between May and September of 1988, allegedly knowing about Edward's violent behavior, defendant Bond's motion for summary judgment must be denied.

### 4. *Defendant Marlin Nimocks*

As to defendant Marlin Nimocks, however, the court finds that plaintiff has failed to present any evidence indicating that defendant Nimocks acted in a reckless manner on September 11, 1988, when responding to Selena Johnson's complaint of violence. In response to Selena's complaint of violence, Officers Nimocks and McGinnis arrived at the scene to investigate.[42] Selena told Nimocks that Edward had threatened her life and that she had an order of protection entered against Edward.[43] Pursuant to the policy of the Chicago Police Department which requires a supervisor to be notified and sent to the scene when an off-duty police officer is accused of a crime, Officer Nimocks requested that a supervisor be sent to the scene.[44] Officer Nimocks' sector sergeant, defendant Boone, then arrived at the scene. It is undisputed that Nimocks did not arrest Edward because he was not given any instructions to do so by Sergeant Boone, the supervisory officer at the scene.[45] Based on these undisputed facts, the court finds that as a matter of law, Officer Nimocks did not act in a reckless manner in failing to arrest Edward Johnson, because once Sergeant Boone arrived, Officer Nimocks no longer had the authority to make the decision. Therefore, defendant Nimocks' motion for summary judgment is granted.

### CONCLUSION

For the reasons stated above, defendants' joint motion to strike is GRANTED IN PART AND DENIED IN PART as explained in this opinion, defendant City's motion for summary judgment is DENIED, defendant Bonds' motion for summary judgment is DENIED, and the individual defendants' joint motion for summary judgment is DENIED as to defendants Ivory and Boone, and GRANTED as to defendant Nimocks. The remaining parties are strongly urged to discuss the settlement of this case and report on the status thereof on May 5, 1995 at 10:30 a.m.

---

**38.** *Id.* at 65; 117–122.

**39.** *Id.*

**40.** *Id.* at 72–73.

**41.** *Id.* at 75.

**42.** *12N Statement,* Exhibit D; Nimocks Dep. at 34.

**43.** Nimocks Dep. at 45–47.

**44.** *Id.* at 42–43.

**45.** *Id.* at 51.