William **CHIPMAN**, Administrator of the Estate of Conni Black, Plaintiff,

v.

**CITY OF FLORENCE, Bobby Jo Wince; John Dolan; Thomas Dusing; Ron Kenner; Rob Reuthe; and Chris Alsip, Defendants.**

Civ. A. No. 94–62.

United States District Court
E.D. Kentucky,
Covington Division.

Aug. 2, 1994.

Charles H. Deters, Eric C. Deters, Deters, Benzinger & Lavelle, PSC Crestview Hills, KY, for plaintiff.

R. Kent Westberry, Landrum & Shouse, Louisville, KY, Hugh O. Skees, Rouse, Skees, Wilson & Dillon, Florence, KY, W. Kenneth Nevitt, Williams & Wagoner, Louisville, KY, Jeffrey Mando, Adams, Brooking & Stepner, Covington, KY, for defendants.

### OPINION & ORDER

BERTELSMAN, Chief Judge:

This is a civil rights action, pursuant to 42 U.S.C. § 1983, which alleges that the City of Florence, three Florence police officers, and two Boone County Sheriff deputies caused the death of Conni Black.

William Chipman, Administrator of the Estate of Conni Black is the plaintiff herein; the City of Florence, Kentucky, Bobby Jo Wince, John Dolan, Thomas Dusing, Ron Kenner, Rob Reuthe and Chris Alsip are the defendants herein.

This matter is before the court on (1) the motion of defendants Wince, Dolan and Dusing [Florence Police officers] to dismiss (Doc. # 3), and (2) the motion of the defendant City of Florence to dismiss (Doc. # 5).

Although affidavits have been filed, a hearing showed that it was inappropriate to treat the matter as one for summary judgment,

and the affidavits will not be considered. Fed.R.Civ.P. 12(b)(6).

## FACTUAL BACKGROUND

The following facts are taken from plaintiff's complaint, giving the plaintiff the benefit of all inferences.

On the evening of February 19, 1994, and the early morning hours of February 20, 1994, Conni Black, Susan Stemler, and Steve Kritis were patrons at Willies' Saloon at the Ramada Inn in Florence, Kentucky. Kritis, Black and Stemler apparently had an argument during the course of which Kritis allegedly struck and threatened to kill Black. To escape Kritis, Stemler and Black left the establishment in an automobile driven by Stemler. Kritis chased them in his vehicle and allegedly rammed his vehicle into Stemler's during the pursuit.

Eventually, Stemler attracted the attention of a Florence Police Officer, Thomas Dusing. Stemler allegedly described the preceding events to Officer Dusing and asked for his assistance. However, Officers Dusing, Bobby Wince and John Dolan, along with Deputies Chris Alsip and Rob Reuthe of the Boone County Sheriff's Department allegedly ignored Stemler's pleas. Instead, Stemler was arrested for driving under the influence. Kritis, although questioned by the police, was never given a sobriety test.

Black, who was very intoxicated, was allegedly told by the officers that if she did not voluntarily go with Kritis, she would also be arrested. Black went with Kritis. Black was allegedly so intoxicated that the police had to assist her out of Stemler's vehicle and into Kritis' vehicle. Some time later, Kritis, who was operating his vehicle under the influence of alcohol, wrecked his vehicle and Black was killed. Kritis was subsequently charged with manslaughter.

Consequently, William Chipman, the administrator of Black's estate, filed this suit against Wince, Dolan, Dusing, Reuthe and Alsip, in their individual capacities, and the City of Florence, and Ron Kenner, the Sheriff of Boone County, in their official capacities. Specifically, Chipman asserts that the individual officers violated Black's Four-

teenth Amendment right not to be deprived of life without due process of law. This is a substantive due process claim. Chipman also contends that the City of Florence and the Sheriff of Boone County failed to properly train and supervise its officers.

## ANALYSIS

■ It is well-settled that government officials performing discretionary functions generally have qualified immunity from liability for civil damages insofar as their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, to avoid qualified immunity, it must be shown that the particular conduct of an official clearly fell within an area protected by a constitutional right, such that a reasonable official would have known that his or her conduct violated the constitutional right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Walton v. City of Southfield,* 995 F.2d 1331, 1336 (6th Cir. 1993).

The Sixth Circuit has recently made clear in an extensive analysis that, where police officers are concerned, the test of whether their actions clearly violated constitutional rights is not to be applied from "the infallible perception of 20/20 hindsight," but rather in the light of the exact circumstances the officers were facing in the field. *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 999 (6th Cir. 1994). The court also stated:

> "To determine whether qualified immunity protects [the officers] we must inquire: 1) whether [the plaintiff] identified a clearly established right alleged to have been violated; and 2) whether a reasonable police officer in the defendant's position should have known that his conduct was undertaken in violation of these rights."

*Id.*

Plaintiff here seeks relief for what one scholar refers to as "indirect injury," that is, one inflicted not by the agents of the government but by someone else, from whom the government allegedly should have protected

the plaintiff. Julie Shapiro, *Snake Pits and Unseen Actors: Constitutional Liability for Indirect Harm*, 62 U.Cinc.L.Rev. 883 (1994) (hereinafter *Snake Pits* ).

Plaintiff contends that the officers violated Black's clearly established Fourteenth Amendment right to life as protected by the doctrine of substantive due process when they placed her in Kritis' vehicle and left her in his care. This court disagrees.

The abstract right of substantive due process is indeed well established. *See e.g., Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992). However, our analysis must not be abstract but "on a fact-specific, case-by-case basis." *O'Brien*, 23 F.3d at 999. Specifically, the court must inquire "whether a reasonable police officer in the defendants' position should have known that his conduct was undertaken in violation of these rights." *Id.*

This inquiry shows that the law in this area is unclear and that not only would no reasonable police officer have known what duty was owed to the plaintiff under the facts alleged in this case, but even the Supreme Court is uncertain on the matter.

As stated by the Supreme Court in *DeShaney v. Winnebago County DSS*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. It is only when the State takes a person into its custody and holds him there against his will that the Constitution imposes upon the State a duty to assume some responsibility for his safety and general well-being. *Id.*, 489 U.S. at 198, 109 S.Ct. at 1005. Additionally, the Supreme Court stated that:

> "[h]ad the State by the affirmative exercise of its power removed [the plaintiff] from free society and placed him in a foster home operated by its agents, we *might* have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect.... We express no view on the validity of this

analogy, however, as it is not before us in the present case."

*Id.*, 489 U.S. at 200 n. 9, 109 S.Ct. at 1006 n. 9 (emphasis added).

The lower courts are divided on the duty owed in the "indirect harm" situation. *See Walton*, 995 F.2d at 1336–38 (officers who allegedly abandoned minor passengers, who were 15 and two years old at the time of driver's arrest, were entitled to qualified immunity); *but see White v. Rochford*, 592 F.2d 381 (7th Cir.1979) (police not entitled to qualified immunity for leaving minor passengers at the side of the road after having arrested the driver).

In *Walton*, the Sixth Circuit states "[t]here is disagreement about the issue raised by this case, both among the circuits which have addressed it, and within one of those circuits." 995 F.2d at 1337.[1]

The learned author of the law review article cited above makes some thoughtful suggestions as to how the law might be resolved in this troubled area. It has not, however, been so resolved, nor in any way resolved, at this time. Indeed, she observes:

> "Section 1983 liability in cases of indirect harm remains a subject of much dispute and confusion. *A review of the cases at first discloses an array of disparate approaches* relying on apparently conflicting—or, at best, unrelated—legal rules."

*Snake Pits*, at 945 (emphasis added).

This court concludes that the law is unsettled on the issue of whether Conni Black, who was not taken into custody in the ordinary sense, had a clearly established right to be protected by the police under the circumstances alleged in the complaint. As such, the officers are entitled to qualified immunity even construing the complaint with every liberality.

The municipalities, however, may not invoke the doctrine of qualified immunity. Rather, the plaintiff may recover if he can show that the damage was the result of an unconstitutional city or county policy, or fail-

---

1. The court then extensively discusses numerous cases to which the reader is referred in the interest of saving space. *See also* the numerous cases discussed in *Snake Pits*.

ure to train, subject to the complex rules governing those kinds of liability. *Cf. O'Brien v. City of Grand Rapids, supra.* The complaint alleges such theories on the part of the city and county and a determination of their liability must await further factual development.

It should be noted that the plaintiff may have a negligence remedy under state law against the officers, and, indeed a state action is pending.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That the motion of defendants Wince, Dolan, and Dusing, to dismiss (Doc. # 3) be, and it is, hereby **granted,** and the claims against them in their individual capacities are dismissed;

2. That the oral motion of defendants Reuthe and Alsip to dismiss be, and it is, hereby **granted,** and the claims against them in their individual capacities are dismissed; and

3. That the motion of defendant City of Florence to dismiss (Doc # 5) be, and it is, hereby **denied, without prejudice.**