Carol COSSIO, as guardian and legal representative of Sahrie Carol Colon and Donte Eloy Colon, Minor children of Yvonne Cossio, deceased, Plaintiffs,

v.

The CITY AND COUNTY OF DENVER, COLORADO, and Robert Oritz, individually, and in his capacity as an officer of the Denver Police Department, Defendants.

Civil Action No. 96–K–1493.

United States District Court,
D. Colorado.

March 19, 1997.

"[a]ctions for the recovery of any debt founded upon any contract, obligation, or liability."

H.R.S. § 657–1(1) (1995).

Jeffrey D. Easley, Jeffrey D. Easley, P.C., Lakewood, CO, for Plaintiffs.

Theodore S. Halaby, Heidi A. Harpowiski, Halaby Cross Liechty & Schluter, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an action filed by Carol Cossio as guardian and legal representative of Sahrie Carol Colon and Donte Eloy Colon, minor children of Yvonne Cossio, deceased, ("Plaintiffs")[1] against The City and County of Denver, Colorado ("City") and former Denver police officer, Robert Ortiz. Plaintiffs' claims are for deprivation of civil rights under 42 U.S.C. § 1983, wrongful death under Colo. Rev.Stat. § 13–21–201 *et seq.*, negligence and *respondeat superior*/vicarious liability.

Jurisdiction exists on the § 1983 claim under 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 exists on the state law claims.

Pending are Plaintiffs' motion for enlargement of time to present further evidence, which I deny; Defendants' motion for judgment on the pleadings, treated here as a motion for summary judgment, which I

---

1. Although the case caption refers to "Plaintiffs," the pleadings are inconsistent in the use of the singular and plural in this regard. To avoid confusion in this opinion, I refer to "Plaintiffs" in the plural. In citing a particular pleading, however, I cite the name of the document as it appears thereon.

grant; and Defendants' motion for reconsideration which I deny as moot. I dismiss the case.

### I. *Procedural Status.*

On December 13, 1996, Defendants filed a Motion for Judgment on the Pleadings and Motion for Partial Stay of Discovery. I ordered Plaintiffs to respond by January 14, 1997 and Defendants to reply by January 24, 1997.

On December 27, 1996, Plaintiffs filed a Motion to Compel Response to Request for Production of Documents "pertaining in any way to Defendant Robert Ortiz' employment with the City and County of Denver and the Denver Police Department, including his entire personnel file." (Pls.' Mot. to Compel ¶ 1.)

On December 30, 1996, I granted Plaintiffs' motion to compel and ordered the production of the requested documents forthwith.

On January 14, 1997, Plaintiffs filed their brief in response to Defendants' motion for judgment on the pleadings and partial stay of discovery together with Plaintiff's Motion for Enlargement of Time to Present Further Evidence. Plaintiffs noted Defendants had not yet complied with the order compelling production.

Also on January 14, 1997, Defendants' Motion for Reconsideration was filed, requesting me to reconsider the order granting the production of Officer Ortiz' personnel file, or, in the alternative, requesting an *in* camera examination of the documents to determine whether they are reasonably calculated to lead to the discovery of admissible evidence.

On January 24, 1997 Defendants' Reply in Support of Motion for Judgment on the Pleadings (Motion for Summary Judgment) and Motion for Partial Stay of Discovery was filed.

Plaintiff's Response to Defendants' Motion for Reconsideration was filed on January 27, 1997.

At a hearing January 30, 1997, I ordered Plaintiffs to file a surreply concerning Defendants' motion for judgment on the pleadings (motion for summary judgment). I granted Defendants' request for a partial stay of discovery. I gave deference to, though I am not bound by, Colorado Revised Statutes § 24–10–108 (1988) which provides "[i]f a public entity raises the issue of sovereign immunity ... the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion." Thus discovery was suspended on the state law claims.

On February 18, 1997 Plaintiff's Brief in Reply re: Defendants' Motion for Judgment on the Pleadings was filed. This document is more correctly termed Plaintiffs' surreply and I hereafter refer to it as such for the sake of clarity.

On February 28, 1997, Plaintiff's Unopposed Motion to Vacate the Discovery Cutoff and Deadlines for Joining Parties and Amending Pleadings was filed. On March 4, 1997, I granted the motion.

Although a trial date has not been set, a pretrial conference is scheduled for April 11, 1997.

### II. *Factual Background.*

Plaintiffs assert on the morning of December 2, 1993, Jerome Perea broke into Yvonne Cossio's home and assaulted her.[2] Cossio's two children, Donte Eloy Colon and Sahrie Carol Colon were present in the home.

Defendant Robert Ortiz, an Officer with the Denver Police Department, responded to a dispatch triggered by a "911" call from Cossio. The police dispatcher noted the call as "boyfriend hitting" and the dispatch log identifies the call type as "DOMV–DOMESTIC VIOLENCE."

---

**2.** In support, Plaintiffs cite the deposition testimony of Elaine Roybal, a friend of Cossio, to the effect that, after Defendant Ortiz had left the home of Cossio, Cossio told Roybal that Perea had come into her home through a window and hit her, and showed Roybal a bruise on her leg. In addition, the coroner's report mentions contu-

sions on the right leg. Defendants' statement that "the undisputed facts are that Perea had been initially allowed inside the house and never struck Yvonne prior to Officer Ortiz' arrival," (Defs.' Reply Supp. Mot. Summ. J.at 5), is misleading. At minimum, there is a genuine dispute of fact in this regard.

Ortiz walked up to the front door of the Cossio residence at about 10:30 a.m. He was accompanied by Elaine Roybal, a friend of Cossio. Ortiz recalled that he was dispatched on an "unwanted party." However, he testified Yvonne Cossio did not tell him Perea had assaulted her. Roybal's narration of the information imparted to Ortiz and herself upon their arrival also makes no mention of a break in or assault.

Ortiz testified that during his initial conversation with Cossio, he saw her children inside the house and when he entered the house and was standing in the living room, he saw them watching the television.

Perea, aged seventeen, was a friend of Cossio's younger brother. According to Plaintiffs' response, "Perea had a crush on Yvonne which had turned to obsession." (Pl's. Br. Resp. Defs.' Mot. J. Pleadings at 2.) Defendants state it is undisputed that Ortiz was given no information or indication that Perea and Cossio had any relationship whatever. Ortiz testified: "There was [sic] no cohabitants. There was nothing telling me about a boyfriend, girlfriend, brother, sister. There was no violence. There was nothing to indicate it was domestic. It was just a guy who went to see his friend, the friend wasn't there, and he was going to wait, and she didn't want him there and told him to leave." (Defs.' Reply Supp. Mot. J. on Pleadings, Ex. A at 48.) Further, Roybal, who described herself as "like a sister" to Cossio, testified Cossio had not told her of any romantic relationship she had with Perea.

Plaintiffs submit an affidavit of Yvonne Cossio's mother, Carol Cossio, to the effect that before the murder, Yvonne told her Perea was trying to pursue a relationship with her. They also submit an affidavit of Daril Cinquanta which states he was told by Perea, then incarcerated at Limon Correctional Facility, that he had been dating Yvonne for about a year before December 2, 1993. In addition, a report on June 5, 1996 by Kathy A. Morell, M.D. reflects that she too was told by Perea that he had a relationship with Cossio. Plaintiffs also attach an affidavit of Perea's mother stating that her

son had told her he had a relationship with Yvonne Cossio.

After Ortiz entered the Cossio home, Perea walked into the living room and told him that he would leave. Ortiz followed Perea out of the house and returned only to retrieve Perea's jacket.

Ortiz ran a clearance on Perea and told him not to return. The clearance revealed Perea to be on probation for auto theft and a gang member. Neither Ortiz nor another officer who came to the house asked Cossio if Perea had struck her or made any attempt to discover if the incident was one of domestic abuse. They did not take Perea into custody.

Approximately one hour after Ortiz left the Cossio home, he was dispatched back there and found Cossio lying dead in the front yard from four bullet wounds inflicted by Perea.

### III. *Motion for Judgment on the Pleadings treated as Motion for Summary Judgment.*

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c).

Plaintiffs' response to the motion for judgment on the pleadings referred to matters outside the pleadings, as did Defendants, reply. I rely on such matters and treat the motion as one for summary judgment.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in

the light most favorable to the party opposing summary judgment . . . .

While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim but need only point to an absence of evidence to support the non-movant's claim. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant."

*Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir.1996) (quoting *Wolf v. Prudential Ins. Co.,* 50 F.3d 793, 796 (10th Cir.1995)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### A. *Plaintiffs' Concession of Certain Claims.*

Defendants raise the issue of the City's sovereign immunity to Plaintiffs' second claim for wrongful death and third claim for negligence. Plaintiffs concede the state law wrongful death claim against the City is barred by sovereign immunity, and the negligence claim is barred against both Ortiz and the City. Similarly Plaintiffs agree to dismiss the fourth claim for relief based on *respondeat superior* against the City.

Accordingly, there are no pending state law claims against the City. The only remaining claim against it is the first claim for deprivation of civil rights under 42 U.S.C. § 1983. The claims remaining against Ortiz are under § 1983 and a state law claim for wrongful death. All of these claims are the subject of Defendants' motion for judgment on the pleadings.

### B. *Section 1983 Claims against the City and Ortiz.*

The Complaint alleges under the first claim for relief for deprivation of civil rights under 42 U.S.C. § 1983 that Defendants deprived (1) Yvonne Cossio of her life and (2) Sahrie Carol Colon and Donte Eloy Colon of the life and the benefits of their mother. (Compl. at 4.)

To establish a claim under § 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the defendant of a right, privilege, or immunity secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983.

Here, Carol Cossio is asserting a § 1983 claim (1) as the personal representative of the estate of Yvonne Cossio and (2) as the guardian of Sahrie Carol Colon and Donte Eloy Colon, the children of Yvonne Cossio. Each of these § 1983 claims must be separately addressed.

In their surreply, Plaintiffs maintain Defendants are liable under § 1983 because "(a) the City intentionally encouraged police disregard of procedures designed to protect the 'due process' and 'equal protection' rights of Yvonne Cossio and her children and/or (b) the City and its officers assumed, and then breached, a duty to protect Yvonne Cossio's and her children's constitutional rights." (Pl.'s Br. Reply re: Defs.' Mot. J. Pleadings at 10.)

Plaintiffs state in their response to Defendants' motion that the Complaint asserts both a survival claim pursuant to § 1983 and Colorado Revised Statutes § 13–20–101 (1987) and a wrongful death claim pursuant to § 1983 and Colorado Revised Statutes § 13–21–101 (1987) on behalf of Yvonne Cossio for Defendants' violation of her rights.

■ The general rule is that a § 1983 claim survives a plaintiff's death if that would be the result under applicable state law. *Sager v. City of Woodland Park,* 543 F.Supp. 282, 287 (D.Colo.1982). The statutory mechanism authorizing resort to state survival law to permit a civil rights action to survive the plaintiff's death is 42 U.S.C. § 1988. Section 1988 requires, in light of the failure of § 1983 to address the question of survival, that state law be used unless it is "inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a).

This analysis has been extended to permit incorporation of state wrongful death statutes into § 1983 through § 1988. *Sager*, 543 F.Supp. at 288. The nature of a § 1983 action after the true plaintiff's death differs depending on whether state survival or state wrongful death law is incorporated into the federal cause of action.

A survival statute allows the cause of action to survive regardless of the death of a party. *Id.* Thus, a § 1983 survival action, relying on the incorporation of state survival law through § 1988, amounts to the assertion of the cause of action that the deceased would have had she lived, requesting damages for violation of the decedent's rights. *Id.*

On the other hand, a wrongful death statute provides for a cause of action to arise for the benefit of certain designated persons in order to compensate them for their personal losses as a result of the decedent's death, against those who wrongfully caused the death. *Id.*

In this case, the applicable state statutes provide for survival claims, Colo.Rev.Stat. § 13–20–101 (1987), and for wrongful death claims, Colo.Rev.Stat. § 13–21–202 (1987). As stated, Plaintiffs maintain the Complaint asserts both a survival claim and a wrongful death claim pursuant to § 1983 and the relevant state statutes. I note, however, that the estate of Yvonne Cossio is not a named party to this action.

The underlying alleged constitutional violations on which Plaintiffs rely are twofold. First, they assert the City should be held liable for the unlawful acts of its police officers under § 1983 "where the execution of the city's policy and/or custom can be shown to have proximately caused a constitutional violation." (Pl.'s Br. Reply re: Defs.' Mot. J. Pleadings at 11.) This aspect of the claim is based on a violation of the Fourteenth Amendment's Equal Protection Clause.

■ Plaintiffs cite *Watson v. City of Kansas City, Kansas,* which held "[a]lthough there is no general constitutional right to police protection, the state may not discriminate in providing such protection." 857 F.2d 690, 694 (10th Cir.1988). There, the Tenth Circuit noted "[a] plaintiff in an equal protection action has the burden of demonstrating discriminatory intent." *Id.*

> [T]o survive summary judgment, the plaintiff must go beyond her pleadings and show that she has evidence of specific facts that demonstrate that it is the policy or custom of the defendants to provide less police protection to victims of domestic assault than to other assault victims. She must also provide evidence that discrimination was a motivating factor for the defendants and that she was injured by operation of the policy or custom.

*Id.*[3]

The *Watson* court found the plaintiff had presented sufficient evidence that could allow a jury to find in her favor on her § 1983 claim. She had presented evidence showing that, out of 608 nondomestic assault cases in Kansas City over a one year period where there was a known perpetrator, there were 186 arrests (an arrest rate of 31%) whereas, out of 369 domestic assaults, there were only 69 arrests (a rate of 16%). *Id.* at 695. In addition, Watson had presented evidence that police officers received training in handling domestic violence situations which encouraged them "to attempt to 'defuse' the situation and to use arrest as a last resort." *Id.* at 696.

Finally, the court noted, Watson's version of events regarding her own situation, involving a long history of domestic violence and summonsing of the police, if believed, might

---

**3.** *Watson* does not engage in a traditional equal protection analysis. It does not address whether a policy of treating domestic violence assaults differently from other assaults is, *ipso facto,* an equal protection violation. The equal protection clause requires a police department and police officers to perform their duties without intentionally discriminating on an irrational basis. *See Bartalone v. County of Berrien,* 643 F.Supp. 574 (W.D.Mi.1986). Orthodox equal protection analysis would require an examination of the policy to determine if the classification (i.e. domestic violence versus other assaults) has a rational basis or is invidiously discriminatory. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 256, 97 S.Ct. 555, 558–59, 50 L.Ed.2d 450, 466 (1977). *Arguendo,* a policy based on frequency of withdrawing complaints, false complaints, resolving disputes, etc. could satisfy equal protection requirements.

"demonstrate a pattern of deliberate indifference on the part of the Police Department." Id. The Tenth Circuit concluded "[s]uch a pattern, when examined in the context of the other evidence the plaintiff has presented constitutes evidence of a custom or policy." Id.

The *Watson* court observed that, because no general right to police protection exists, the plaintiff was required to show "she was treated differently because of her membership in a certain class." Id. Thus, the court doubted "whether evidence of deliberate indifference in the plaintiff's case alone would be sufficient evidence of *different* treatment." Id. (emphasis in original).

■ Here, Plaintiffs have not presented any statistical evidence, nor any persuasive evidence with regard to the training of police officers, nor any history of domestic violence and summonsing of the police. In short, Plaintiffs have not offered sufficient evidence for a jury to find in their favor regarding a discriminatory policy or intent to provide less protection to victims of domestic assault than to other assault victims. Even if the evidence presented could be interpreted as showing deliberate indifference, this would not suffice. Id. Accordingly, summary judgment on the § 1983 claim is appropriate insofar as such claim is based on the allegation that the execution of the City's policy and/or custom proximately caused an equal protection violation.

The second alleged constitutional violation on which Plaintiffs rely is that "the City and its officers assumed, and then breached, a duty to protect Yvonne Cossio's and her children's constitutional rights." (Pl.'s Br. Reply re: Defs.' Mot. J. Pleadings at 10.) Plaintiffs allege "Ortiz' conduct created a special relationship between himself and Yvonne Cossio because, in part, it was entirely foreseeable that an evermore angry Perea would return to harm Yvonne Cossio as retribution for her having called the police." (Compl.¶ 15.) This aspect of the § 1983 claim is based on a violation of the Due Process Clause of the Fourteenth Amendment.

The Supreme Court has held "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty,

and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). The Court concluded, as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197, 109 S.Ct. at 1004. However, although the Due Process Clause imposes no affirmative obligation on the state to provide the general public with adequate protective services, such duty may arise out of a "special relationship" created or assumed by the State with respect to certain individuals. Id. at 200–02, 109 S.Ct. at 1005.

[4] A special relationship arises "where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.1993), (citing *DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006 ("[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them")).

■ The issue here is whether Defendants created a dangerous situation or rendered Yvonne Cossio or her children more vulnerable to danger. Plaintiffs assert Defendants' conduct increased the risk of danger to Yvonne Cossio. In this regard, Plaintiffs attach an affidavit of Daril Cinquanta who states, when he spoke with Perea at the Limon Correctional Facility in Limon, Colorado, Perea told him "if he had been arrested by the Denver Police Department, he would have had a chance to calm down and would have been thinking more about what he was doing." (Pl.'s Br. Reply re: Defs.' Mot. J. Pleadings at 6, Ex. D, Aff. Cinquanta ¶ 5.)

In addition, Plaintiffs attach a copy of a report of Kathy Morall, M.D., which Cinquanta states he obtained from the court file in the case *State v. Perea*. At the request of a Denver District Court judge, Morall performed a psychiatric evaluation of Perea on the issue of impaired mental condition. Plaintiffs cite that part of the report which states: "I went to my sister Tangee's house and I was mad and crying because Yvonne

had called the cops on me. The cops were harassing me and thinking [sic] about her going out with the guy." (*Id.*, Aff. Cinquanta 4, Morall report, May 10, 1994 at 3.)

Accepting this evidence as admissible for the purposes of resolving this motion, and considering it in Plaintiffs' favor, it is nevertheless insufficient to establish that a "special relationship" existed between Defendants and Yvonne Cossio and/or her children because Defendants played a part in placing Yvonne Cossio in the position of danger which resulted in her murder.

The cases cited by Plaintiffs in this regard are distinguishable. *Sadrud–Din v. City of Chicago,* 883 F.Supp. 270 (N.D.Ill.1995) concerned the murder of a Chicago police officer, Selena Johnson, in her home by her estranged husband, Edward Johnson, also a Chicago police officer. There had been a history of physical abuse and death threats and an order of protection. The decedent wife had reported the abusive behavior to the husband's commanding officer and requested that he take action as she was in fear of her life. Two days before the murder, officers arrived at the house in response to the wife's complaint of violence and death threats, and despite the wife's request, failed to arrest the husband.

The *Sadrud–Din* court found the plaintiff had presented sufficient evidence to establish that a special relationship existed between the city and Selena Johnson because the city knew of its employee Edward's propensities and repeated threats and acts of domestic violence, yet failed to arrest him on various occasions in the five months before the murder. Clearly the nature of the evidence is distinguishable.

Plaintiffs' reliance on *Chipman v. City of Florence,* 858 F.Supp. 87 (E.D.Ky.1994), which concerned a motion to dismiss on the grounds of the doctrine of qualified immunity, is also unpersuasive. *Davis v. Fulton County,* 884 F.Supp. 1245 (E.D.Ark.1995) also concerned a motion to dismiss. There, the court concluded allegations against a deputy sheriff would support a conclusion that he owed the plaintiff a constitutional duty of protection for purposes of liability under § 1983 on the ground that she was placed in special danger when a detainee was directed to unload a police car parked behind plaintiff's store.

Plaintiffs also cite *Cellini v. City of Sterling Heights,* 856 F.Supp. 1215 (E.D.Mich. 1994), a § 1983 case concerning a wife who was killed by her husband following five reported incidents of domestic violence. The court dismissed the § 1983 claim insofar as it was based on a "special relationship" between the wife and the police department. *Id.* at 1219–20. In support of the § 1983 equal protection claim, Cellini cited the deposition testimony of three police officers to the effect that the policy of the police department with regard to domestic disturbance was not to arrest for misdemeanor assault unless the assault was committed in an officer's presence. The court held a material issue of fact existed as to whether the police department had a policy of treating domestic assaults differently from other assaults and precluded summary judgment.

As discussed above, the evidence produced by Plaintiffs in the instant case does not meet the requirements of the Tenth Circuit as set out in *Watson* for creating a material issue of fact as to whether a police department had a policy of treating domestic assaults differently from other assaults in violation of the Equal Protection Clause. Similarly, the evidence produced to show violation of the Due Process Clause is insufficient to create such material issue of fact as to whether a "special relationship" existed resulting in an affirmative duty of Defendants to protect Yvonne Cossio.

With regard to the § 1983 claim on behalf of Sahrie Carol Colon and Donte Eloy Colon, the children of Cossio, Plaintiffs state "[t]he children have a cause of action against Defendants for deprivation of their constitutional right of familial association." (Pl's. Br. Reply re: Defs.' Mot. J. Pleadings at 12.)

In *Trujillo v. Board of County Commissioners,* the Tenth Circuit noted "[a]lthough [§ 1983] does not require a specific state of mind for actionability, a court must examine closely the nature of the constitutional right asserted to determine whether a deprivation of that right requires any particular state of

mind." 768 F.2d 1186, 1189 (10th Cir.1985) (citations omitted).

The court determined "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." *Id.* at 1190. Defendants urge the dismissal of Plaintiffs' first claim for its failure to allege such intent.

Plaintiffs maintain the Complaint states "Defendants deprived Sahrie Carol Colon and Donte Eloy Colon of the life and, therefore the benefits, of their mother," (Compl.¶ 25), that such right is secured by the United States Constitution, (*id.* ¶ 26), and the Defendants' conduct "amounted to deliberate and reckless indifference to Plaintiffs' Constitutional rights," (*id.* ¶ 27). Plaintiffs maintain "deliberate" has the same meaning as "intentional" and therefore Defendants' argument is to no avail.

The Complaint, viewed in the light most favorable to Plaintiffs, could be construed as alleging that Defendants had the intent to interfere with the freedom of intimate association, as is required to state a claim under § 1983. However, because I treat this as a motion for summary judgment, I must determine whether a genuine issue exists as to whether Defendants acted with an intent to deprive Cossio's children of their freedom of association with their mother. A remedy exists under § 1983 only if Defendants' conduct was "directed at that right." *Trujillo,* 768 F.2d at 1190.

Defendants assert the uncontested facts as set forth in their reply demonstrate that Ortiz' conduct had nothing to do with Cossio's relationship with her children and, as such, the § 1983 claim should be dismissed. Plaintiffs state the necessary allegation of intent "appears plainly in Plaintiff's [sic] Complaint and by the facts of this case." (Pls. Br. Reply re: Defs.' Mot. J. Pleadings at 12.)

■ In order to avoid summary judgment, a plaintiff must offer more that mere asser-

tions, legal conclusions or arguments, and must demonstrate by relevant and specific facts that a real controversy exists. *See Pride v. Does,* 997 F.2d 712, 716 (10th Cir. 1993). Plaintiffs have not demonstrated that a real dispute exists as to whether the City or Ortiz directed any of their actions toward Yvonne Cossio's children with the requisite intent to cause them any physical or emotional loss or damage. Thus there is no genuine issue of material fact in this regard.

The mandate of *Trujillo* is clear. The alleged conduct by Ortiz and the City, even if improper with respect to Yvonne Cossio, "will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right." *Trujillo,* 768 F.2d at 1190. Plaintiffs have not produced any evidence indicating that either Defendant acted with an intent to deprive Cossio's children of their constitutional rights.

The Tenth Circuit has repeatedly upheld the *Trujillo* directed intent requirement. *See Apodaca v. Rio Arriba County Sheriff's Department,* 905 F.2d 1445, 1448 (10th Cir. 1990) (refusing to reconsider *Trujillo* and holding "the Supreme Court's recent cases requiring proof of more than negligence to support a § 1983 action premised on the due process clause are harmonious with the precedent of this circuit, including *Trujillo* "); *Archuleta v. McShan,* 897 F.2d 495, 498 (10th Cir.1990) (stating "[t]he requirement ... that there be an element of deliberateness in directing the misconduct toward the plaintiff before the Due Process Clause is implicated" comported with Tenth Circuit precedent); *Bryson v. City of Edmond,* 905 F.2d 1386, 1393–94 (10th Cir.1990) (upholding the *Trujillo* directed intent requirement).

For the aforesaid reasons both the City and Ortiz are entitled to summary judgment on the § 1983 claims as asserted on behalf of Yvonne Cossio for violation of her rights and on behalf of the Cossio children for violation of their rights.[4]

---

4. I do not here discuss Plaintiffs' assertions that Ortiz should have conducted more investigations, found probable cause and arrested Perea in accordance with the Denver Domestic Violence

Manual or Denver Department Operations. Absent proof of the type of evidence discussed in *Watson,* a *DeShaney* type "special relationship," or the *Trujillo* intent requirement, these asser-

### C. *State Wrongful Death Claim against Ortiz.*

Because I dismiss all claims over which I have original jurisdiction, I may decline to exercise supplemental jurisdiction over the sole remaining state law claim for wrongful death against Ortiz. Considering my familiarity with the case and its procedural status, however, I will exercise jurisdiction on this remaining claim.

Plaintiffs' second claim for wrongful death is brought under Colorado law. The relevant statute states in pertinent part:

> When any person dies from any injury resulting from or occasioned by the negligence, unskillfulness, or criminal intent of any officer ... while running, conducting, or managing any ... car ... the corporation or individuals in whose employ any such officer ... is at the time such injury is committed shall pay for every person ... so injured the sum of not exceeding ten thousand dollars and not less than three thousand dollars ....

Colo.Rev.Stat. § 13–21–201(1) (1987).

Plaintiffs assert Yvonne Cossio died from an injury occasioned by the "negligence, wilful, and wanton conduct of Defendants," (Compl.¶ 30), resulting in economic and non-economic loss to Sahrie and Donte Colon, (*id.* ¶ 31).

In seeking judgment on this claim, Defendants note an action for wrongful death is a tort action. *See Jones v. Hildebrant,* 432 U.S. 183, 185–86, 97 S.Ct. 2283, 2285–86, 53 L.Ed.2d 209 (1977). With respect to the City, Defendants rely on Colorado Revised Statutes § 24–10–108 (1988) which states "sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort," except where such immunity has been waived under certain enumerated circumstances. Plaintiffs concede none of the exceptions to sovereign immunity apply and state they will not seek relief for wrongful death under Colorado law against the City.

With regard to the wrongful death claim against Ortiz, Defendants rely on the Colorado Governmental Immunity Act, which states in relevant part: "A public employee shall be immune from liability in any claim for injury ... which lies in tort or could lie in tort ... unless the act .or omission causing such injury was willful and wanton." Colorado Revised Statutes § 24–10–118(2) (1988).

The phrase "willful and wanton" is not defined in the Colorado Governmental Immunity Act. The majority of courts to address the issue have applied the definition set forth in Colorado's exemplary damages statute where the term is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo.Rev.Stat. § 13–21–102(1)(b) (1987). *See Moody v. Ungerer,* 885 P.2d 200, 205 (Colo.1994); *Navratil v. Parker,* 726 F.Supp. 800, 805 (D.Colo. 1989) (applying Colorado law, district court held defendant would only be liable for willful and wanton conduct if he acted "not only unlawfully, but either with the intent to injure, or in conscious disregard of the probability that his acts would result in injury to the plaintiff").

Defendants argue this claim should be dismissed against Ortiz because his actions were not willful and wanton as a matter of law. They maintain the facts supporting summary judgment on this issue are undisputed. They cite the deposition testimony of Ortiz and Roybal as well as the Complaint to the effect that Ortiz responded to Cossio's call and entered her residence, asked Cossio the identity of Perea and whether he resided with Cossio at that address. Cossio told Ortiz that Perea did not live there and she wanted him out of her home. Ortiz escorted Perea out of Cossio's home in accordance with her request.

Plaintiffs assert "all evidence produced thus far and attached as exhibits to this brief" support a finding that Defendants' acts were willful and wanton. (Pls.' Br. Reply

tions do not give rise to a recognized deprivation of constitutional rights required to assert a § 1983 claim.

Defs.' Mot. J. Pleadings at 8 ¶ 5.) They attach the Denver Domestic Violence Manual, (1990 Ed.) which they maintain is identical in pertinent part to the Denver Police Department Operations Manual in effect at the time of Yvonne Cossio's death, pertinently stating:

"Domestic Violence" is defined as any harmful physical contact, or threat thereof, between ... unmarried couples ....

(Pls.' Br. Reply Re: Defs.' Mot. J. on Pleadings, Ex. F at 1.)

The manual further provides:

C. The policy of the Denver Police Department is to view all domestic violence complaints as instances of alleged criminal conduct. Arrest, charging and taking custody of the suspect(s) involved shall be deemed the most appropriate law enforcement response when officers determine that probable cause exists in domestic violence situations.

D. In instances of domestic violence, officers shall investigate and take those actions necessary and appropriate whenever they have probable cause to believe that a crime has been or is about to be committed.

(Pls.' Br. Reply Re: Defs.' Mot. J. on Pleadings, Ex. F at 2.)

Plaintiffs also attach the dispatch log to which Ortiz responded which identifies Yvonne Cossio's 911 call as "DOMVDOMESTIC VIOLENCE" and states: "BOYFRIEND HITTING CLR/UNWANTED/SUSP." (*Id.,* Ex. H.)

█ In light of this dispatch log, based on the factual record, it is conceivable that a reasonable jury could find that Ortiz' failed to conduct an adequate investigation to determine if Perea had committed acts of "domestic violence" and to establish if probable cause existed for taking Perea into custody. If a jury were to make such finding, it might reasonably conclude that Ortiz' actions in not making such further inquiry were negligent.

However, the contention that Ortiz acted "willfully and wantonly" is unsupported by any evidence in the record. Plaintiffs have not met the requirements of Rule 56 to create a genuine issue of fact in this regard. Further, where, as here, the allegations regarding Ortiz' willfulness and wantonness are the same as those forming the basis of the underlying tort itself, the plaintiff will not avoid application of the Colorado Governmental Immunity Act. *See Drake v. City & County of Denver,* 953 F.Supp. 1150, 1160 (D.Colo. 1997). Accordingly summary judgment is appropriate on the second claim for relief against Ortiz.

### IV. *Motion for Enlargement of Time to Present Further Evidence.*

In response to the motion for judgment on the pleadings, Plaintiffs request an opportunity, in accordance with Rule 12(c), to present additional evidence in support of their response following additional discovery. Plaintiffs note that, although I granted the motion to compel the production of Ortiz' personnel file, the documents have not been produced and they have not had the information in the file for the purposes of preparing a response.

Defendants urge me to deny the request for enlargement of time. They state any additional time for discovery would not change the already established undisputed facts.

I am not persuaded that additional discovery nor the perusal of Ortiz' personnel file would present material pertinent to the issues raised by Defendants in their motion for judgment on the pleadings, treated as a motion for summary judgment, i.e. information that would materially change the relevant undisputed facts. I therefore deny the motion for enlargement of time.

### V. *Motion for Reconsideration.*

Because I grant Defendants' motion for judgment on the pleadings, treated as a motion for summary judgment, their motion for reconsideration of the order compelling the production of Ortiz' personnel file is moot.

### VI. *Conclusion.*

For the aforesaid reasons I deny Plaintiffs' motion for enlargement of time to present further evidence. I grant Defendants' motion for judgment on the pleadings, treated here as a motion for summary judgment, on all remaining claims against the City and Ortiz and dismiss the case. I deny as moot

Defendants' motion for reconsideration. Accordingly,

IT IS ORDERED THAT Plaintiff's Motion for Enlargement of Time to Present Further Evidence is DENIED;

IT IS FURTHER ORDERED THAT Defendants' Motion for Judgment on the Pleadings (treated as a motion for summary judgment) is GRANTED on all remaining claims against The City and County of Denver, Colorado and Robert Ortiz;

IT IS FURTHER ORDERED THAT the case is DISMISSED with each party to pay his, her, or its own costs;

IT IS FURTHER ORDERED THAT Defendants' Motion for Reconsideration, filed January 14, 1997, is DENIED AS MOOT;

IT IS FURTHER ORDERED THAT the Pretrial Conference scheduled for April 11, 1997 is VACATED.